748 So.2d 1249 (1999)
STATE of Louisiana, Appellee,
v.
Lester C. BALL, Appellant.
No. 32498-KA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 1999.
*1251 Peggy J. Sullivan, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Bruce Dorris, Tommy J. Johnson, Assistant District Attorneys, Counsel for Appellee.
Before NORRIS, GASKINS and DREW, JJ.
GASKINS, J.
The defendant, Lester Charles Ball, was convicted as charged of armed robbery. He was adjudicated a fourth felony offender and sentenced to life imprisonment. The defendant appeals. We affirm his conviction; however, we vacate the fourth felony offender adjudication and its resulting sentence. We enter an adjudication of the defendant as a third felony offender and remand to the trial court for resentencing in compliance with this opinion.[1]

FACTS
On October 30, 1995, the Jack in the Box restaurant on Bert Kouns in Shreveport was robbed by two armed men around closing time at 10:00 p.m. Present at the time of the robbery were restaurant employees Fredrica Jones, Rhonda Warner, and Eric Thomas. Contrary to company policy, which forbade taking out the trash late at night due to the danger of robbery, Thomas exited through the rear door to take out the trash. The two robbersone tall and thin, the other short and stocky entered the restaurant through this door. At trial, Ms. Jones and Ms. Warner identified the defendant as the short robber.[2] Ms. Jones was ordered to empty the registers under the supervision of the defendant and forced to open the office safe. The employees were placed in a walk-in freezer and told to remain there. Before leaving, the robbers cut the wires to the VCR in the office which had recorded the robbery from the close circuit cameras located in the restaurant; they took the VCR and the metal box housing it.
No arrests were made. In April 1996, the stolen VCR was discovered in a wooded area near the restaurant. After viewing the tape of the robbery found in the VCR, the police questioned the defendant. In a taped statement, he admitted his participation in the offense but claimed that one of the employees, Eric Thomas, had planned the robbery and approached him to carry it out.
The defendant was charged with armed robbery. He was convicted after a jury trial in September 1998. Thereafter, the state filed a fourth felony habitual offender bill of information. At a hearing on November 13, 1998the same hearing at which he was adjudged a third felony offender following his conviction for first degree robbery in # 32,497-KAhe was adjudicated a fourth felony offender and sentenced to life imprisonment. The trial court ordered that the sentences be served concurrently.
The defendant appeals his conviction and sentence.

SUFFICIENCY OF EVIDENCE
In his first assignment of error, the defendant challenges the sufficiency of the evidence.[3] In particular, he attacks the identification of him by Ms. Warner and Ms. Jones on the basis that they had not identified him prior to trial. Also, he contends that the state failed to prove that the offender was "armed with a dangerous weapon" because the guns used in the robbery were never recovered and there *1252 was no evidence that the weapons carried by the robbers were real guns.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Thomas, 30,490 (La. App.2d Cir.4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La.App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925.
As to the identification of the defendant as the robber, despite the passage of almost three years between the restaurant robbery and the defendant's trial, Ms. Warner and Ms. Jones were emphatic in their identification of the defendant as one of the men who robbed them at gunpoint. During the robbery, the defendant made no effort to cover his face. Both witnesses observed that the defendant had gained weight since the robbery and that he had longer hair, but this did not lessen their degree of certainty in identifying him. Furthermore, each witness was allowed to view the videotape and point the defendant out for the jury. Additionally, the jury was allowed to both hear and read the defendant's confession to the robbery. Thus, identification of the defendant was not an issue in this case.
Armed robbery is defined in La. R.S. 14:64 as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." Ordinarily, the victim's testimony, if believed by the trier of fact, is sufficient to prove the essential elements of armed robbery, even without corroborating physical or scientific evidence. State v. Williams, 26,230 (La.App.2d Cir.9/21/94), 643 So.2d 284, writ denied, 96-0115 (La.3/29/96), 670 So.2d 1236. The production of a weapon is not necessary in an armed robbery prosecution where the *1253 state can establish through witness observations at the crime scene, all of the elements of the offense beyond a reasonable doubt, including the existence and use of a dangerous weapon. State v. Johnson, 31,390 (La.App.2d Cir.3/31/99), 730 So.2d 1035.
The witnesses testified that the defendant was armed with a real handgun. Ms. Warner testified that one of the robbers cautioned the restaurant employees not to do anything stupid because he would hate to shoot them. Also, Ms. Jones testified that the robbers discussed shooting out the fiberglass surrounding the VCR when they encountered difficulty removing the machine from the steel box in which it was housed.
Under the facts of this case, a rational trier of fact could have found beyond a reasonable doubt that this evidence, the testimony of the victims and the defendant's tape recorded confession, viewed in the light most favorable to the prosecution, proved that the defendant committed an armed robbery using a handgun as a dangerous weapon. The introduction of the handgun was not necessary to prove that a dangerous weapon was used in the commission of the offense because it was established through the testimony of the victims.
This assignment of error is without merit.

INSTANTER SUBPOENA TO CO-DEFENDANT
The defendant contends that the trial court erred in denying his request that an instanter subpoena issue to Eric Taylor, his indicted, but unadjudicated, codefendant. Near the end of trial, prior to the testimony of the state's last witness, the defendant formally requested that the trial court issue an instanter subpoena for Mr. Taylor.[4] As an officer of the court, the prosecutor informed the court that he had spoken to Mr. Taylor's counsel, who told him that, if subpoenaed, Mr. Taylor would invoke his Fifth Amendment right against self-incrimination. The trial court denied the request on two grounds: first, the request was untimely; and second, the witnesswho had not yet been triedwould invoke his Fifth Amendment right.
The right of a defendant to compulsory process for obtaining witnesses in his behalf is embodied in both the federal and state constitutions as well as the statutory law of this state. U.S. Constitution Amendment 6; La. Const. Art. 1, § 16; La.C.Cr.P. art. 731. The right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served. State v. Latin, 412 So.2d 1357 (La.1982).
It has been held that an accused cannot claim that he was denied the right to compulsory process for obtaining witnesses where the defense did not seek to subpoena the witness. State v. Green, 448 So.2d 782 (La.App. 2d Cir.1984); Beach v. Blackburn, 631 F.2d 1168 (5th Cir.1980). Here, the defense did not subpoena this witness until after trial had begun.
A defendant may not force a witness to exercise his privilege before the jury. State v. Berry, 324 So.2d 822 (La. 1975). Under the facts of the instant case, it was not error for the trial judge to allow a blanket assertion of Mr. Taylor's privilege where he was charged with participation in the same crime as the defendant and it was apparent that the defense's questioning would be devoted to subject matter which would require Mr. Taylor to invoke the Fifth Amendment privilege. Once the trial judge determined that the witness would refuse to answer any questions about the armed robbery, it was proper not to allow the witness to be called before the jury. State v. Edwards, 419 So.2d 881 (La.1982). Furthermore, given the fact that the court had credible information *1254 from Mr. Taylor's attorney that Mr. Taylor would invoke his Fifth Amendment rights, it was not necessary to bring Mr. Taylor into court to make that invocation in person outside of the jury's presence.
This assignment is without merit.

ADJUDICATION AS FOURTH FELONY OFFENDER
In this assignment of error, the defendant contends that the trial court erred in adjudicating him a fourth felony offender. The argument in this matter concerns the order of his convictions. The following is the list of the convictions utilized by the state to bill the defendant as a fourth felony offender on September 29, 1998:
(1) Attempted Simple Robbery, committed on August 24, 1987, pled guilty and sentenced on November 28, 1988, Docket No. 138,994, First Judicial District Court, Caddo Parish, Louisiana
(2) Access Device Fraud, committed on October 22, 1991, pled guilty and sentenced on August 16, 1993, Docket No. 93-920, Twenty-Fourth Judicial District Court, Jefferson Parish, Louisiana
(3) First Degree Robbery, committed July 20, 1995, convicted March 1, 1996, Docket No. 176,164, First Judicial District Court, Caddo Parish, Louisiana.
(4) Armed Robbery, committed October 30, 1995, convicted September 23, 1998, Docket No. 190,267, First Judicial District Court, Caddo Parish, Louisiana.
The question presented is whether the defendant can be adjudged a habitual offender on the basis of a fourth offense which was committed before the defendant was convicted for the third offense.
The state argues that State v. White, 27,188 (La.App.2d Cir.8/23/98), 660 So.2d 515, allows them to charge the defendant as a fourth felony offender despite the fact that the defendant's fourth offense was committed before a conviction was obtained on the third offense. In White, the defendant had prior convictions in 1991 and 1992 which overlapped. The court held that neither La. R.S. 15:529.1 nor the case law required that a defendant's conviction for the first offense be complete before that conviction and a subsequent second conviction could be used to find the defendant a third felony offender. The only requirement was that both the two previous convictions be separately obtained and final, as they were in White, before the defendant was charged and adjudged a third felony offender.
The Habitual Offender Law, La. R.S. 15:529.1, provides in relevant part:
A. Any person who, after having been convicted within this state of a felony..., or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
(2) If the third felony is such that....
(3) If the fourth or subsequent felony is such that....
B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime.
In State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), Mims filed for postconviction relief in 1988 asserting that his *1255 thirty-five-year sentence for purse snatching as a third offender was improper because the two predicate convictions, in 1978, occurred on the same day. His application was denied by both the district court and the court of appeal. State v. Minis, 535 So.2d 1103 (La.App. 2d Cir. 1988). After first granting his writ application, the Louisiana Supreme Court denied Mims relief in their original opinion. On rehearing, the Supreme Court concluded that Mims was not properly a third offender upon committing either the second degree battery or the purse snatching because, although at the time of commission of each of these offenses he had earlier been convicted twice (attempted simple burglary and attempted simple robbery), he nonetheless had not been through the required sequencing of commission followed by conviction, then commission followed by another conviction. He had been brought before the bar of justice for a first time after committing both crimes in 1978. It was only the commission of the battery and purse snatching in 1985which succeeded the conviction for the first and second crimesthat qualified him as a multiple offender (in fact, a second offender as to each of the latter crimes).
In its discussion of the history of the multiple offender statute, the court in Mims pointed out that from 1956 to 1982, La. R.S. 15:529.1(B) contained a second sentence which stated:
Provided, however, that the offender shall be deemed a second offender only if the crime resulting in the second conviction shall have been committed after his first conviction; that one shall be deemed a third offender under this Section only if the crime resulting in the third conviction shall have been committed after his conviction for a crime which in fact caused him to be a second offender, whether or not he was adjudged to be a second offender in the prior instance; and that one shall be deemed to be a fourth offender under this Section only if the crime resulting in the fourth conviction shall have been committed after his conviction for a crime which in fact caused him to be a third offender, whether or not he was adjudged to be a third offender in the prior instance.
The jurisprudence interpreting this statute between 1956 and the 1982 amendment consistently held that under the Habitual Offender Law, second offender status could only result from an offense committed after a first conviction, and third offender status after a conviction which would have qualified as a second offender conviction, and so on. State v. Taylor, 347 So.2d 172 (La.1977); State v. Simmons, 422 So.2d 138 (La.1982); State v. Lennon, 427 So.2d 860 (La.1983).
In Acts 1982, No. 688, the Legislature amended the habitual offender statute. In Section B, the first sentence was re-enacted with only minor punctuation and grammatical changes while the second sentence was deleted. The act did not alter Section A.
In Mims, the Louisiana Supreme Court found that the multiple offender statute was vague and confusing. Given the fact that the sequencing language in Sec. A was unchanged, the court was unable to determine whether the legislature intended to overrule 19 years of jurisprudence by deleting Sec. B or to merely remove superfluous language, believing that the jurisprudence and Sec. A provided adequate guidance. Applying the well-established principles of strict statutory construction and lenity, the court was then obliged to find that Mims was only a second offender, not a third. He had committed two independent crimes which resulted in the 1978 conviction. Thus, at the time of commission of the subsequent crimes of second degree battery and purse snatching, he could only be charged as a second offender.
The same is true of the instant defendant. He committed the crime of first degree robbery in July 1995. A conviction for this offense, which was used as the third felony on the fourth offense habitual offender bill of information, was not obtained until March 1996. The instant offense *1256 of armed robbery, which was billed as the fourth felony offense, was committed on October 30, 1995, well before the conviction on the third offense was obtained. As such, the defendant could be billed only as a third offense felony offender in conjunction with his conviction for armed robbery. Thus, we are compelled to vacate his adjudication as a fourth felony offender. However, based upon the record before us, we enter an adjudication of the defendant as a third felony offender in this matter and remand to the trial court for re-sentencing in compliance with this opinion.[5]

CONCLUSION
The defendant's conviction for armed robbery is affirmed; however, we vacate his adjudication as a fourth felony offender and the corresponding sentence of life imprisonment for this offense. We adjudicate the defendant as a third felony offender and remand to the trial court for resentencing in compliance with this opinion.
CONVICTION AFFIRMED; ADJUDICATION AS FOURTH FELONY OFFENDER AND SENTENCE VACATED; ADJUDICATION AS THIRD FELONY OFFENDER ENTERED AND REMANDED FOR RE-SENTENCING.
NOTES
[1] Initially, this court consolidated the appeal in the instant case with the appeal addressing the defendant's conviction for first degree robbery in # 32,497-KA. However, for purposes of clarity, today we render separate opinions in these two matters. See State v. Ball, 32,497 (La.App.2d 12/15/99), 748 So.2d 1239.
[2] At the time of this offense, the defendant had been released on bond for the July 1995 first degree robbery charge in # 32,497-KA.
[3] One of the defendant's assignments of error was not briefed and is deemed abandoned. URCA 2-12.4; State v. Adkins, 31,300 (La. App.2d Cir.11/9/98), 721 So.2d 1090.
[4] Defense counsel stated on the record that the request was made only at his client's insistence and against his advice.
[5] Because we must vacate the fourth felony offender adjudication and its corresponding sentence, we pretermit consideration of the assignment of error claiming excessive sentence.